UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC FRANKLIN, et al., | No.  2:22-cv-00465-MCE-CKD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| PACIFICORP, et al., | |
| Defendants. | |

By way of this action, a number of homeowners, renters, business owners, residents, occupants, and property owners (hereafter, "Plaintiffs") seek to recover damages incurred arising from the so-called Slater Fire, a September 2020 conflagration that they allege damaged or destroyed more than 700 structures and burned more than 157,000 acres within the Klamath National Forest.  Compl., ECF No. 1-1 ¶¶ 7–8. Plaintiffs allege that Defendant PacifiCorp ("Defendant" or "PacifiCorp"), an electrical power provider, caused the fire both by negligent vegetation management and the negligent inspection, repair, maintenance, and operation of the electrical equipment in its utility infrastructure.  Id. ¶¶ 6, 20.

Plaintiffs initiated this matter, setting forth claims for inverse condemnation, trespass, nuisance, violation of California Public Utilities Code § 2106, violation of California Health and Safety Code § 13007, and negligence, in the Siskiyou County

1

1  Superior Court, after which Defendant removed it here, ostensibly pursuant to this

2  Court's jurisdiction over federal questions of law.[1]  Presently before the Court are

3  Plaintiffs' Motion to Remand, by which they argue Defendant has failed to establish a

4  basis for federal jurisdiction, and Motion for Sanctions Pursuant to Federal Rule of Civil

5  Procedure 11.[2]  ECF Nos. 12, 16.  For the following reasons, the Motion to Remand is

6  GRANTED whereas the Motion for Sanctions is DENIED.[3]

7

8  **STANDARDS**

9

10  **A.    Motion to Remand**

11      When a case "of which the district courts of the United States have original

12  jurisdiction" is initially brought in state court, the defendant may remove it to federal court

13  "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There are

14  two bases for federal subject matter jurisdiction:  (1) federal question jurisdiction under

15  28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court

16  has federal question jurisdiction in "all civil actions arising under the Constitution, laws,

17  or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction

18  "where the matter in controversy exceeds the sum or value of $75,000, . . . and is

19  between citizens of different States, [or] citizens of a State and citizens or subjects of a

20  foreign state . . . ."  Id. § 1332(a)(1)–(2).

21      A defendant may remove any civil action from state court to federal district court if

22  the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The

23  party invoking the removal statute bears the burden of establishing federal jurisdiction."

24

25  [1] This Court recently addressed an identical notice of removal and motion to remand in another case arising from the Slater Fire and involving the same Defendant and defense counsel.  See Farmers Ins. Exchange v. PacifiCorp, Case No. 2:21-cv-00801-MCE-CKD ("Farmers").

26  [2] Unless otherwise noted, all further references to "Rule" or "Rules" are to the Federal Rules of

27  Civil Procedure.

28  [3] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v.

2  Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the

3  removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566

4  (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of

5  removal in the first instance," the motion for remand must be granted.  Id.  Therefore, "[i]f

6  at any time before final judgment it appears that the district court lacks subject matter

7  jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

8  **B.      Motion for Sanctions Pursuant to Rule 11**

9  Under Rule 11, by presenting papers to this court, an attorney certifies that their

10  contentions are warranted by existing law, supported by factual evidence, and are not

11  presented "for any improper purpose, such as to harass, cause unnecessary delay, or

12  needlessly increase the cost of litigation[.]"  Fed. R. Civ. P. 11(b).  If the Court finds that

13  Rule 11(b) has been violated, it may impose an appropriate sanction on any attorney,

14  law firm, or party that violated the rule, such as "reasonable expenses, including

15  attorney's fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(1)–(2).  "A sanction

16  imposed under this rule must be limited to what suffices to deter repetition of the conduct

17  or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).

18  When "sanctions are initiated by motion, Rule 11 provides for a mandatory 21 day

19  safe-harbor period before a motion for sanctions is filed with the court." Truesdell v. S.

20  Cal. Permanente Med. Grp., 293 F.3d 1146, 1151–52 (9th Cir. 2002) ("This period is

21  meant to give litigants an opportunity to remedy any alleged misconduct before

22  sanctions are imposed."); see Fed. R. Civ. P. 11(c)(2).  The moving party must serve the

23  offending party "with a filing-ready motion as notice that it plans to seek sanctions," and,

24  "[a]fter 21 days, if the offending party has not withdrawn the filing, the movant may file

25  the Rule 11 motion with the court."  Id.

26  Rule 11 "is designed to deter attorneys and unrepresented parties from violating

27  their certification that any pleading, motion or other paper presented to the court is

28  supported by an objectively reasonable legal and factual basis; no showing of bad faith

1    or subjective intent is required."  Truesdell v. S. Cal. Permanente Med. Grp., 209 F.R.D.

2    169, 173–74 (C.D. Cal. 2002).  Rather, Rule 11 is governed by an objective standard of

3    reasonableness.  See, e.g., Conn v. CSO Borjorquez, 967 F.2d 1418, 1420 (9th Cir.

4    1992).  Thus, where a party "pursues causes of action for which there is no legal basis

5    whatsoever," sanctions may be warranted.  Bhambra v. True, No. C 09–4685–CRB,

6    2010 WL 1758895, at *3 (N.D. Cal. Apr. 30, 2010).  "Under the plain language of the

7    rule, when one party files a motion for sanctions, the court must determine whether any

8    provisions of subdivision (b) have been violated."  Warren v. Guelker, 29 F.3d 1386,

9    1389 (9th Cir. 1994).  If Rule 11(b) was violated, the court "may" impose sanctions.  Id.

10    at 1390.  However, a court cannot simply assert that it "declines to impose sanctions."

11    Id.

12

13                                **ANALYSIS**

14

15        **A.**    **Plaintiffs' Motion to Remand**

16        Defendant removed this action asserting federal question jurisdiction on two

17    grounds:  (1) the Klamath National Forest is a "federal enclave" and, as such, exclusive

18    jurisdiction is vested in the federal courts; and (2) this action is removable because

19    Defendant was acting at the direction of a federal officer when it engaged in the conduct

20    underlying Plaintiffs' suit.  Not. Removal, ECF No. 1 ("NOR").  None of these arguments

21    are persuasive.

22            **1.**    **Defendant Has Not Shown that the Klamath National Forest Is a Federal Enclave.**

23

24        This Court has jurisdiction over tort claims arising in federal enclaves.  Durham v.

25    Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006).  This doctrine is derived

26    from Article I, § 8, Clause 17 of the United States Constitution:

27    ///

28    ///

> The Congress shall have power . . . [t]o exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

"Exclusive jurisdiction can be acquired by the United States over land within a state in three ways:  (1) by purchase or donation of property with the consent of the state as provided in the United States Constitution; (2) by a reservation of jurisdiction by the United States upon the admission of the state into the union; and (3) the state's cession, together with the United States acceptance, of such jurisdiction." Coso Energy Developers v. Cnty. of Inyo, 122 Cal. App. 4th 1512, 1520 (2004) (internal citations omitted).  "A federal enclave is governed exclusively by federal law unless otherwise provided." Hillman v. Leixcon Consulting, Inc., No. LA-16-CV-001186, 2016 WL 10988766, at *4 (C.D. Cal. 2016).  While Defendant clearly contends that the Klamath National Forest is a federal enclave, the basis for its argument has been a moving target.

In its NOR, Defendant contends that the Klamath National Forest satisfies the prerequisites for federal enclave status:

> First, the United States acquired the land that became the Klamath National Forest by presidential proclamation in 1905. (See Flores Decl., Ex. 3 [34 Stat. 3001 (May 6, 1905)].)  The 1905 presidential proclamation was authorized by Congress in an 1891 Act cited in the proclamation.  (See Flores Decl., Ex. 4 [26 Stat. 1095 (Mar. 3, 1891)].)
>
> . . .
>
> Second, the State of California further consented to exclusive federal jurisdiction over all federal lands within its territorial boundaries during the relevant time period.  When the Klamath National Forest was ceded to the federal government, California's then-active general cession statute provided that all cessions to the United States conveyed to the federal government "exclusive jurisdiction over such piece or parcel . . . ceded or conveyed to the United States . . . for all purposes except the administration of the criminal laws of this State and the service of civil process therein." (See Flores Decl., Ex. 5 [Stats. 1891, Ch. 181, §§ 1–2 (Mar. 31, 1891)].)  California's express consent to "exclusive" federal jurisdiction applied not

1
2

just to land conveyed as of 1891 but also prospectively to any "piece or parcel of land" that "may be hereaf[t]er ceded or conveyed to the United States." Id.

3
4
5
6
7
8
9
10

Third, because the United States acquired the Klamath National Forest prior to 1940, its acceptance of the land coupled with California's express consent to exclusive federal jurisdiction establishes that the Klamath National Forest is a federal enclave. Prior to 1940, "federal acceptance of ceded jurisdiction was presumed absent an express refusal." [United States v.] Fields, 516 F.3d [923,] 935 [(10th Cir. 2008)] (citing Fort Leavenworth Ry. Co. v. Lowe, 114 U.S. 525, 528 (1885)); see also Paul, 371 U.S. at 264 ("Thus if the United States acquires [land] with the 'consent' of the state legislature . . . the jurisdiction of the Federal Government becomes 'exclusive.'"); see also id. at 265–66 (interpreting the successor to California's 1891 statute conveying exclusive jurisdiction to ceded lands as creating federal enclaves).

11
12

NOR ¶¶ 10–12 (alterations in original). In its Opposition, Defendant concedes this is incorrect. See Def.'s Opp'n Mot. Remand, ECF No. 14, at 11.

13
14
15
16
17
18
19
20
21

The United States actually acquired the land now known as the Klamath National Forest from Mexico under the 1848 Treaty of Guadalupe Hidalgo, which ended the Mexican-American war. See Ex. D, Treaty of Peace, Friendship, Limits, and Settlement, U.S.-Mex., Feb. 2, 1848, 9 Stat. 922 ("Treaty of Guadalupe Hidalgo"), Singleton Decl., ECF No. 12-6; Thompson v. Doaksum, 68 Cal. 593, 596 (1886) ("The lands within the territorial limits of the state of California were ceded to our general government by the republic of Mexico under the treaty of Guadalupe Hidalgo of February 2, 1848."). "By that treaty the United States became vested with the title to all the lands in California not held in private ownership by a legal or equitable title." Thompson, 68 Cal. at 596.

22
23
24
25
26
27
28

"From 1848 until California's admission to the Union, the United States 'possessed the rights of a proprietor and had political dominion and sovereignty' over the land." Hillman, 2016 WL 10988766, at *3 (quoting Lowe, 114 U.S. at 526 (noting that the United States had rights of a proprietor and had political dominion and sovereignty over a military reservation sitting on territory acquired by cession from France before the territory was admitted to the Union as the state of Kansas)). "In 1850, when the United States admitted California to the Union, it did not reserve exclusive jurisdiction over

1  federal lands within California." Id. (citing Act for the Admission of the State of California

2  into the Union, 9 Stat. 452 (Sept. 9, 1850)).  Given the foregoing, Defendant now relies

3  solely on the theory that the Klamath National Forest is a federal enclave because, after

4  becoming a state, California somehow ceded, and the United States accepted, exclusive

5  jurisdiction over the land despite the fact that California had never ceded the land itself

6  to the federal government.  See Coso, 122 Cal. App. 4th at 1520.

7           To that end, Defendant now contends that "California's 1891 cession statute

8  granted exclusive federal jurisdiction to the United States, reserving only criminal

9  jurisdiction."  Def.'s Opp'n Mot. Remand, ECF No. 49, at 12.  That cession statute

10  provides:

11              The State of California hereby cedes to the United States of
               America exclusive jurisdiction over such piece or parcel of land
12              as may have been or may be hereafter ceded or conveyed to
               the United States, during the time the United States shall be or
13              remain the owner thereof, for all purposes except the
               administration of the criminal laws of this State and the service
14              of civil process therein.

15  Act of Mar. 3, 1891, ch. 181, 1891, Cal. Stat. 262.  According to Defendant, it follows

16  that Mexico's 1848 cession to the United States of the land now making up the Klamath

17  National Forest is sufficient to result in California's subsequent cession (over forty years

18  later) of exclusive jurisdiction over those lands to the federal government as well.  This

19  argument of course turns on the presumption that California could and did cede

20  exclusive jurisdiction to the federal government over land that California never owned

21  and that was instead originally ceded to the United States by a third party (again, in this

22  case, Mexico).[4]  However, this argument was properly rejected in Coso,

23  122 Cal. App. 4th at 1520.

24              In Coso, the Court of Appeal reasoned that the plain language
               of the [California's 1891 cession] statute was ambiguous as to
25              the identity of the party ceding the land. 122 Cal. App. 4th at
               1523–25.  The Court of Appeal then turned to the legislative
26              intent of the 1891 Statute, but found that the legislative history
               provided no meaningful indication of the legislature's
27              intent.  Id. at 15.    The opinion then looked to other

28  _____
    [4] If this argument seems hard to follow, it's because it is.

1  |  interpretative aids to guide its analysis of the statute.
2  |  The <u>Coso</u> court considered whether the interpretation would produce absurd results, whether subsequent legislation could be harmonized with the interpretation, and the rule that
3  |  statutes restricting or derogating a state's sovereignty must be strictly construed in favor of the state.  The Court of Appeal
4  |  concluded that interpreting the 1891 Statute to apply to lands <u>ceded by any party</u> (1) is an unreasonable interpretation that
5  |  would produce absurd results; (2) is an interpretation that cannot be harmonized with subsequent California statutes and
6  |  California Attorney General opinions; and (3) is an interpretation that weighs against the state's
7  |  sovereignty.  <u>Id.</u> at 1529-33.  The opinion concluded that the 1891 Statute only applies to lands ceded to the United States
8  |  by California.

9   <u>Hillman</u>, 2016 WL 10988766, at *5 (emphasis added).  "[This] Court finds the

10  comprehensive opinion and reasoning of the <u>Coso</u> court persuasive, and concludes that

11  the Supreme Court of California would adopt the Court of Appeal's reasoning."  <u>Id.</u>

12  "Accordingly, the 1891 Statute did not transfer exclusive jurisdiction over [the Klamath

13  National Forest] to the United States."[5]  <u>Id.</u>

14       The California Supreme Court's decision in <u>People v. Hoyt</u>, 8 Cal. 5th 892 (2020),

15  does not compel a different result.  In that case, which was a death penalty appeal

16  resulting in a comprehensive 105-page opinion, the court determined, among many

17  other things, that the Los Padres National Forest was not a federal enclave.  In reaching

18  that conclusion, the court stated that, "although California ceded the lands comprising

19

20       [5] It is worth emphasizing just how absurd the results of a contrary conclusion would be.  The <u>Coso</u> court elaborated:

21

22       If the statute is read as the Coso entities urge, then the class of actors
23       includes virtually anyone who owns or acquires California land and conveys the land to the United States.  The resulting loss of jurisdiction (and tax
24       revenue) would occur by the mere operation of the statute without any further action, approval, or even knowledge of the transfer, by the State of
25       California.  A business or other entity seeking to avoid compliance with California regulations or paying state or county taxes, for example, could
         convey its land to the United States in exchange for the right to operate on
26       the land, and inform the state and county it is now operating within a "federal enclave" beyond California's jurisdiction.  Such an extraordinary
27       delegation of the state's power to assert or transfer its jurisdiction has no reasonable or rational basis and would produce patently absurd
         consequences.

28  122 Cal. App. 4th at 1527.

the Los Padres National Forest to the United States, California also retained jurisdiction to administer its criminal laws on ceded lands." Id. at 913. Taken out of context, that sentence appears to support Defendant's argument here. However, the Hoyt court never actually analyzed the question raised in this case (i.e., whether California had ceded jurisdiction over lands that it had never physically ceded to the United States in the first place) because it concluded that regardless of whether this argument was accepted, exclusive federal jurisdiction still did not attach.[6] Id. Accordingly, this Court concludes that the one passing reference the Hoyt court made to California's cession of the Los Padres National Forest in an opinion that comprehensively covered a myriad of other dispositive issues is unsupported dicta and is not binding. See Norcia v. Samsung Telecommunications America, LLC, 845 F.3d 1279, 1284 (9th Cir. 2017) (only reasoned dicta is binding). Ultimately, Defendant has failed to show that this Court has jurisdiction over this case under the federal enclave doctrine.[7]

## 2. Defendant Has Not Shown that Federal Officer Removal Is Proper Here.

"Federal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense . . . . " Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (citing 28 U.S.C. § 1442(a)). "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it

---

[6] Further undermining the Court's confidence in that portion of the Hoyt decision is the fact that the question there, as here, was not whether California ceded the land, as phrased by the Hoyt court, but whether it ceded jurisdiction.

[7] Even if this Court concluded it was bound by the aforementioned dicta, Defendant's argument would still be foreclosed by Hoyt because that court went on to hold that "only a few years later Congress explicitly recognized the states' authority to reserve jurisdiction over national forest lands: In title 16 United States Code section 480, enacted in 1897, Congress provided that the states' jurisdiction 'over persons within national forests shall not be affected or changed by reason' of the creation of national forests." Hoyt, 8 Cal. 5th at 913. According to the Hoyt court, then, "[b]y this enactment Congress in effect . . . declined to accept exclusive legislative jurisdiction over forest reserve lands . . . . " Id. (quoting Wilson v. Cook, 327 U.S. 474, 487 (1946) (emphasis in original)).

1   can assert a 'colorable federal defense.'"  Id.  (quoting Jefferson Cnty. v. Acker, 527 U.S.

2   423, 431 (1999)).  Not only has Defendant not convinced this Court that there was a

3   causal nexus between its actions being taken pursuant to a federal officer's directions

4   and Plaintiffs' claims, it has also not asserted any colorable defense.

5           First, Defendant asserts that "PacifiCorp's operation and maintenance of power

6   lines on federal land serves a function that the government would have had to perform

7   had it not contracted with PacifiCorp."  Def.'s Opp'n Mot. Remand, ECF No. 14, at 8; see

8   NOR ¶ 16 ("PacifiCorp was engaged in providing electricity to a United States Forest

9   Service fire lookout tower at Slater Butte in the area where Plaintiffs allege the Slater

10  Fire ignited.").  Defendant specifically claims that "the Special Use Permit authorizing

11  PacifiCorp's right-of-way near the Slater Butte Lookout Tower in the Klamath National

12  Forest states that PacifiCorp must 'take all reasonable precautions to prevent and

13  suppress forest fires,' and 'comply with the regulations of the Department of Agriculture

14  and all Federal, State, county, and municipal laws[,]'" as well as "obtain advance

15  approval from the regional forester to conduct non-emergency vegetation management

16  on federal land."  Id. (citing Ex. 7, Flores Decl., ECF No. 1-11).  According to Defendant,

17  because "[t]he regulations incorporated into the permit provided detailed instructions to

18  PacifiCorp about how to carry out its job providing electricity for the federal government

19  and other entities in the Klamath National Forest," it meets its burden to show it acted

20  pursuant to the direction of a federal officer.  Id.  Defendant, however, is incorrect:

21          [A] highly regulated firm cannot find a statutory basis for
            removal in the fact of federal regulation alone.  A private firm's
22          compliance (or noncompliance) with federal laws, rules, and
            regulations does not by itself fall within the scope of the
23          statutory phrase "acting under" a federal "official."  And that is
            so even if the regulation is highly detailed and even if the
24          private firm's activities are highly supervised and monitored.  A
            contrary determination would expand the scope of the statute
25          considerably, potentially bringing within its scope state-court
            actions filed against private firms in many highly regulated
26          industries.

27  Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 153 (2007).

28  ///

                                              10

1   Second, Defendant has not identified any colorable federal defense.  To the

2   contrary, its proffered defense turns on arguments the Court has already rejected.  More

3   specifically, Defendant contends that, "[b]ecause the Klamath National Forest is an

4   exclusive federal enclave, Plaintiffs' state law claims based on theories that did not exist

5   when the Klamath National Forest became an enclave in 1891 are barred by the federal

6   enclave doctrine."  Def.'s Opp'n Mot. Remand, ECF No. 14, at 25 (internal quotation

7   marks omitted).  However, this defense is not viable because the Court has already

8   determined that the Klamath National Forest is not a federal enclave.  Accordingly, for all

9   of the foregoing reasons, Defendant has failed to show this case is removable under the

10   federal officer provision.

11   **B.   Plaintiffs' Motion for Sanctions**[8]

12   Plaintiffs request that the Court impose monetary sanctions pursuant to Rule 11

13   on grounds that Defendant's NOR "alleging federal enclave jurisdiction and federal

14   officer removal was filed for an improper purpose to cause unnecessary delay and to

15   harass Plaintiffs."  Pls.' Mot. Sanctions, ECF No. 16-1, at 6.  Specifically, Plaintiffs cite

16   three "recent decisions from this Court and the Central District involving the same parties

17   and counsel" in arguing that "PacifiCorp's NOR is based on the same failed legal

18   theories of federal enclave jurisdiction and federal officer jurisdiction that have been

19   expressly rejected by this [C]ourt and the Central District."[9]  Pls.' Mot. Sanctions, ECF

20

21   _____

   [8] Plaintiffs state that, "[o]n April 1, 2022, Plaintiffs provided defense counsel with notice of their
22   intention to file a motion for sanctions pursuant to [Rule] 11[,]" and that "defense counsel was given more
   than 21 days to correct specific conduct that Plaintiffs believed violated Rule 11(b)."  Bluth Decl., ECF No.
23   16-2 ¶¶ 9–10; see also Ex. D, Bluth Decl., ECF No. 16-6 (letter dated April 1, 2022).  Because more than
   21 days have passed since notice was given and Defendant has not disputed receiving such notice, the
   Court finds that Plaintiffs have satisfied Rule 11(c)(2)'s safe harbor provision.

24
   [9] In support of their Motion for Sanctions, Plaintiffs provide the three aforementioned decisions.
25   See Exs. A–C, Bluth Decl., ECF Nos. 16-3, 16-4, 16-5.  Additionally, Defendant attaches to its Opposition
   brief a copy of a reporter's transcript from a hearing in one of the Central District cases.  See Ex. 1, Flores
26   Decl., ECF No. 18-2.  Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact
   that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial
27   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot
   reasonably be questioned."  A court may take judicial notice of matters of public record.  Lee v. City of
   L.A., 250 F.3d 668, 689 (9th Cir. 2001).  These documents are the proper subject of judicial notice and
28   thus the Court will take such notice of them.

11

1   No. 16-1, at 7.  According to Plaintiffs, they "have incurred $15,000 in preparing the

2   moving papers for this Motion and the remand motion, plus an additional amount of

3   $5,000 preparing reply papers."  Pls.' Reply ISO Mot. Sanctions, ECF No. 19, at 8; see

4   also Bluth Decl., ECF No. 16-2 ¶ 8 (using a blended hourly rate of $750).

5          As indicated, Plaintiffs argue that Defendant was aware of existing legal authority

6   that rejected the same arguments advanced in this case.  Defense counsel previously

7   represented other utility companies in similar cases arising from the Creek and Bobcat

8   Fires in southern California in which the plaintiffs "allege[d] that a fire was ignited by a

9   utility company's power lines in [the Angeles] National Forest":  Allstate Insurance

10  Company v. Southern California Edison Company, CV 21-4994-MWF (C.D. Cal.

11  Nov. 15, 2021) ("Allstate"), and American Family Connect Property and Casualty

12  Insurance Company v. Southern California Edison Company, CV 21-5132-DMG (C.D.

13  Cal. Dec. 17, 2021) ("American Family").  Pls.' Mot. Sanctions, ECF No. 16-1, at 5; see

14  Exs. B and C, Bluth Decl., ECF Nos. 16-4, 16-5.

15         In Allstate, the defendants based removal, in part, on arguments that the Angeles

16  National Forest is a federal enclave and "the 1891 [cession] statute ceded jurisdiction

17  back to the United States because the Angeles National Forest had been previously

18  'ceded or conveyed to the United States' by Mexico in the Treaty of Guadalupe" Hidalgo.

19  Ex. B, Bluth Decl., ECF No. 16-4, at 10 (citing Hoyt, 8 Cal. 5th at 892).  While the

20  defendants there raised an identical argument to the one in the present case, the court

21  in Allstate determined that there was no federal enclave jurisdiction for a slightly different

22  reason:

23              Defendants argue that the United States has "at least"
                concurrent jurisdiction over the Angeles National Forest
24              because it is a federal enclave.  (Opp. at 9).  Indeed, if the
                Forest is a federal enclave, the Court agrees that the United
25              States could have "at least" concurrent jurisdiction, but this is
                far from exclusive jurisdiction because California continues to
26              regulate the Angeles National Forest.  See Paul v. United
                States, 371 U.S. 245, 268 (1963) ("State[s] may not legislate
27              with respect to a [exclusive] federal enclave … only state law
                existing at the time of the acquisition remains enforceable, not
28              subsequent laws.").

                                          12

1
2
3
4
5

Under the Enclave Clause, if the United States acquired exclusive jurisdiction of the Forest through the 1891 California cession statute, any subsequent laws passed by California after 1891 would be unenforceable in the Forest. See James Stewart & Co. v. Sadrakula, 309 U.S. 94, 100 (1940) ("Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area."). This dynamic is merely hypothetical.

6
7
8

As Defendants acknowledge, the State of California continues to directly regulate utilities within the Angeles National Forest. (Opp. at 21). Therefore, at most, the United States has concurrent jurisdiction over the Forest alongside California.

9    Id. at 11 (emphasis in original).[10]

10    In its Opposition brief, Defendant reiterates its arguments that federal enclave

11    jurisdiction exists, but should the Court disagree, it claims that, "[w]hile the district court

12    in the Edison Allstate case resolved a version of these arguments based on concurrent

13    jurisdiction that is now foreclosed by the Ninth Circuit's decision in Lake, the exclusive

14    jurisdiction arguments PacifiCorp advances here and in the related Farmers case have

15    not been resolved by any court and are 'important questions of first impression in this

16    circuit.'" Def.'s Opp'n Mot. Sanctions, ECF No. 18, at 10 (citation omitted). The Court

17    agrees. Unlike the defendants in Allstate, who conceded that the United States had at

18    least concurrent jurisdiction over the Angeles National Forest, Defendant here argues

19    that the United States has exclusive jurisdiction over the Klamath National Forest. This

20    Court expressly addressed whether the 1891 cession statute transferred exclusive

21    jurisdiction of a national forest to the United States whereas the court in Allstate need

22    not address that specific question given the defendants' concession that at least

23    concurrent jurisdiction exists. These arguments and decisions are distinguishable

24    ///

25    ///

26

27
28

[10] The court also noted the recent Ninth Circuit decision in Lake v. Ohana Mil. Communities, LLC, 14 F.4th 993, 1003 (9th Cir. 2021), which held that the federal enclave doctrine applies only to enclaves in which the United States has exclusive, not concurrent, jurisdiction. Ex. B, Bluth Decl., ECF No. 16-4, at 12.

1   enough to weigh against a finding of sanctions on the basis that Defendant's arguments

2   are unwarranted by law.[11]

3        Plaintiffs fare better with the federal officer jurisdictional arguments, however.

4   Defense counsel in both Allstate and American Family raised the same federal officer

5   theory of jurisdiction, and like this Court, both Central District courts rejected those

6   arguments for similar reasons set forth in this Memorandum and Order.  See Ex. B, Bluth

7   Decl., ECF No. 16-4, at 13–14 ("As explained in Watson, compliance with highly detailed

8   regulations does not equate to acting under the direction of a federal officer or agency.")

9   (citing Watson, 551 U.S. at 153)); Ex. C, Bluth Decl., ECF No. 16-5, at 5–7 (rejecting

10  defendant's arguments that "it was 'acting under' a federal officer by complying with the

11  requirements of the Special Use Permit and by providing electricity to the federal

12  government.").[12]  Regardless, the Court does not find sanctions are warranted on the

13  federal officer jurisdictional argument alone, especially since it was secondary to the

14  federal enclave theory.  Accordingly, the Court declines to award Plaintiff sanctions

15  under Rule 11 and Plaintiffs' Motion is thus DENIED.

16  ///

17  ///

18  ///

19  ///

20

21      [11] Setting aside Allstate, the Court also notes that the somewhat related state court decisions in
    Coso and Hoyt suggest that this area of the law is unclear.  See supra Part A.1.  As such, Defendant's
22  arguments are not legally baseless or frivolous on this alternate ground.

23      [12] Contrary to Plaintiffs' assertion, this Court in Hillman v. PacifiCorp, 2:21-cv-00848-MCE-CKD
    ("Hillman"), did not hold that California retains "concurrent jurisdiction in the Klamath National Forest."
24  Pls.' Mot. Sanctions, ECF No. 16-1, at 8.  In that case, the same Defendant based its removal on a
    completely different theory (i.e., tribal property interests) and only raised the federal enclave theory as a
25  separate basis for jurisdiction in a motion for leave to amend the notice of removal.  See Ex. A, Bluth
    Decl., ECF No. 16-3, at 11.  Because the federal enclave theory was an untimely assertion of a completely
26  separate basis for removal, the Court denied Defendant's motion to amend and thus did not address the
    merits of that theory.  See id. at 11–13, 21 n.7 (quoting ARCO Env't Remediation, LLC v. Dep't of Health
27  and Env't Quality of the State of Mont., 213 F.3d 1108, 1117 (9th Cir. 2000) (stating a defendant may not
    "add a separate basis for removal jurisdiction after the thirty day period" has expired)).  Ultimately, that
28  case was remanded back to state court because there was no tribal trust property interest warranting
    federal jurisdiction.  Id. at 20.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Remand, ECF No. 12, is GRANTED, and Plaintiffs' Motion for Sanctions, ECF No. 16, is DENIED.  The Clerk of Court is directed to remand this action to the Siskiyou County Superior Court and close this case.

IT IS SO ORDERED.

DATED:  June 24, 2022

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE

15